IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          :
                                  :
            v.                    :          1:25CR97-1
                                  :
TINA BROWN COOPER                 :

<u>FACTUAL BASIS FOR A GUILTY PLEA</u>

NOW COMES the United States of America, by and through Randall S. Galyon, Acting United States Attorney for the Middle District of North Carolina, and states that the factual basis for a guilty plea is as follows:

I.  *The defendant brokers the sale of a SKS rifle from Ronnie Oxendine to Ryan Routh, a convicted felon.*

Beginning in or around late-July, 2024, and continuing through August 2, 2024, the defendant, Tina Brown Cooper (Cooper), agreed and conspired with Ronnie Jay Oxendine (Oxendine) and Ryan Wesley Routh (Routh) to sell and dispose of a firearm to a prohibited person (Routh).[1] Oxendine sold the firearm to Routh at the request of Cooper, who was Oxendine's employee at the time.

---

[1] Ryan Routh was convicted of felony possession of a weapon of mass destruction, a Class F felony, on December 20, 2002 in the Superior Court of Guilford County and sentenced to a term of supervised probation of sixty months. He was subject to a term of imprisonment exceeding one year.

In or around mid-July 2024, Cooper asked Oxendine if he had any firearms for sale. On July 27th, Cooper sent a text message to Oxendine informing him that Routh would be arriving in Greensboro, North Carolina, on July 28th and asked if Oxendine would be available to meet in the afternoon. Oxendine responded that he was at the beach but would call Cooper when he got back into town.

Later, Cooper specifically asked Oxendine if he had an AK-47 for sale. Oxendine agreed to sell a similar firearm: a Chinese-made SKS rifle. Cooper then requested that Oxendine bring the SKS rifle to his place of business: Oxendine and Son Roofing Company in Greensboro.

On August 2, 2024, Cooper called Oxendine, who confirmed he was at his place of business and had the SKS rifle with him. Cooper, who was at the time driving with her adult daughter, arranged to meet Routh at Oxendine and Son Roofing Company.

Oxendine was outside of the business when Cooper, her daughter, and Routh arrived. Oxendine asked Cooper why Routh was there; Cooper explained that the SKS rifle was actually for Routh. Oxendine handed the SKS rifle to Routh. Routh paid Oxendine $350 in cash for the SKS rifle and paid Cooper $100 in cash for arranging the sale.

2

II.    *Oxendine admits his role in the sale to law enforcement.*

On September 22, 2024, Federal Bureau of Investigation (FBI) agents interviewed Oxendine in Climax, North Carolina. Oxendine advised he had met Routh in the early to mid-1990s. Oxendine and Routh both owned roofing companies and would occasionally cross paths at hardware supply stores. Oxendine and Routh were not friends. However, Oxendine falsely told agents that Routh had pawned an SKS rifle to Oxendine in the early 1990s for approximately $300.

Oxendine told the agents that on August 2, 2024, Cooper called him and requested to purchase an AK-47 from Oxendine. Oxendine did not want to sell his AK-47 and instead offered to sell Cooper an SKS rifle. Oxendine explained to Cooper that an SKS rifle shot the same round as an AK-47. Oxendine told agents he believed Cooper was going to give the firearm to her grandson.

Oxendine recounted that Cooper and Routh arrived at Oxendine's place of business at approximately 10:00 a.m. on August 2, 2024. Oxendine was surprised to see Routh; Oxendine had not spoken to Routh in approximately 10 years. Oxendine asked Cooper why Routh was there; Cooper explained to Oxendine that the firearm was for Routh, not Cooper. Oxendine nevertheless agreed to proceed with the sale. Oxendine asked Cooper why she did not tell

3

him the firearm was for Routh. Cooper responded that she thought Oxendine would have an issue with Routh being the recipient of the firearm.

Oxendine advised the agents that he learned of Routh's September 15, 2024 attempted assassination of then-former President Donald J. Trump[2] from his sister. Oxendine explained that he contacted Cooper and told her about the assassination attempt. Oxendine said that Cooper told him that she was going to delete all her text messages relating to Routh. Oxendine also told interviewing agents that Cooper had instructed him in text messages to deny any knowledge and to refuse to cooperate with the FBI.

During Oxendine's interview, agents admonished him about the importance of telling the truth, at which point Oxendine admitted he had lied about receiving an SKS rifle from Routh in the 1990s. Oxendine further admitted he told the FBI this in an attempt to minimize his role in Routh's purchase of the SKS rifle.

III.    *The defendant admits her role in the sale to law enforcement.*

On September 22, 2024, agents with the FBI interviewed Cooper in Greensboro, North Carolina. Cooper advised she had known Routh since approximately 1999 and had been an employee of his at United Roofing in

---

[2] Law enforcement arrested Routh related to these charges in Martin County, Florida, and recovered an SKS rifle in the area from which Routh fled when spotted.

Greensboro. Cooper knew that Routh had been charged with multiple felonies in 2002 after he threatened to blow up a police department. Additionally, Cooper believed he had pleaded guilty to approximately five felony charges in December of 2022; however, she did not know if he had served any time in prison.

Cooper told agents that in approximately mid-July of 2024, Routh called her and said that he would be returning to Greensboro in approximately ten days and needed to buy a firearm for his son to use as protection. Cooper recommended to Routh that he buy the firearm from a pawn shop, and Routh then reminded her that he was unable to purchase a firearm in his true name because he was a convicted felon. Cooper then agreed to help Routh acquire a firearm.

Cooper next reached out to Oxendine and asked if he had any firearms for sale. Cooper told Oxendine that she wanted to purchase the firearm for Routh, who intended to give the firearm to his son for protection. Oxendine told Cooper that he was at the beach and did not have any firearms for sale. Around approximately July 27, 2024, Routh called Cooper and the two discussed the type of firearm that he wanted. Routh said that he wanted a long-distance rifle similar to an AK-47. Cooper thought that this request was odd but advised she may be able to find an equivalent firearm, such as an SKS. During the

5

conversation, Routh cautioned Cooper to be careful about what she sent via text message and explained his (Routh's) wife may be able to review their correspondence.

Following this conversation, Cooper reached out to Oxendine again and asked if he had an AK-47 for sale. During the conversation, they agreed that he could sell her an SKS rifle. Cooper asked Oxendine to bring the SKS rifle to his business.

On or about July 31, 2024, Routh called Cooper and asked about the firearm. Cooper told him that she had not found an AK-47 for sale; however, she had found an SKS rifle. Routh said that was fine and he wanted to proceed with the buy.

Cooper stated that on August 2, 2024, she received a call from Routh, who asked where she was. Cooper told Routh she was running errands with her daughter. Cooper then called Oxendine, who confirmed he was at his business and had the SKS rifle with him. Cooper then called Routh and gave him the address of Oxendine's business in Greensboro. Cooper and her daughter met Routh there; Oxendine was outside of the business when they arrived. Oxendine asked why Routh was there and Cooper told Oxendine that the rifle was actually for Routh. Routh then paid Oxendine $350 for the SKS rifle and gave Cooper $100 for brokering the sale.

During the interview, Cooper allowed agents to review the contents of her cell phone. Cooper told them that she had deleted the contents of her phone after she learned of Routh's attempted assassination of Donald J. Trump in West Palm Beach, Florida. Cooper further explained she deleted the content of the device to avoid any involvement with the assassination attempt.

A review of the device confirmed that Cooper had deleted her call logs and text messages. In Cooper's Facebook Messenger, agents saw correspondence between Cooper and Routh from January 14, 2014 to January 1, 2022. During the interview, Cooper provided multiple inconsistent stories to agents regarding the transfer of the firearm. Agents advised Cooper of the potential consequences of lying to federal agents. Cooper then admitted she lied to agents out of fear of criminal consequences for her involvement in the attempted assassination attempt of former President Donald J. Trump. Additionally, Cooper admitted she was "guilty" of assisting Routh, whom she knew was a prohibited person, in acquiring a firearm.

Agents asked Cooper if she had instructed any other person involved in the firearms transaction to lie to the FBI or mislead the FBI's investigation in anyway. On multiple occasions, she denied this. Agents then showed Cooper the text messages she sent to Oxendine on September 19, 2024 (taken from Oxendine's cell phone):

7



After reviewing the messages, Cooper admitted to sending the text messages to prevent Oxendine from cooperating with the FBI.

This the 3rd day of July, 2025.

Respectfully submitted,

RANDALL S. GALYON
ACTING UNITED STATES ATTORNEY


/S/ JOANNA G. MCFADDEN
Assistant United States Attorney
Deputy Chief, Criminal Division
NYSB No.: 4500948
NCSB No.: 60561
United States Attorney's Office

8

Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC  27401
Phone:  336/333-5351

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

Respectfully submitted,

RANDALL S. GALYON
ACTING UNITED STATES ATTORNEY

/S/ JOANNA G. MCFADDEN
Assistant United States Attorney
Deputy Chief, Criminal Division
NYSB No.: 4500948
NCSB No.: 60561
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
Phone: 336/333-5351